THE SHELDON AXLE COMPANY (A CORPORATION) V. FRANK A. SCOFIELD.

85  177
97  583

*Payment—Acceptance of notes—Fraud—Rescission—Findings of fact.*

1. A provision in a contract for the sale of goods, to be delivered from time to time during the year, that settlements were to be made monthly "by note or cash, as agreed," does not bind the vendor to accept any note or notes in payment of the account.

2. If a vendor agrees to receive for discount and collection the notes of *bona fide* customers of the vendee for the amount of his account, and the vendee sends him *accommodation* notes made for the purpose of fraudulently palming them off upon the vendor as customers' paper, the vendor, upon the discovery of such fraud, has the right, although the taking of the notes in the first instance may have extended the time of payment of the debt, to rescind or renounce any agreement, whether express or implied, that their receipt should have that effect, and move at once for the collection of his account; and if the notes are worthless it is not necessary to tender them back to the vendee before bringing suit to enforce such collection.

3. In this case it is held that the findings of fact are incomplete and insufficient, and that further and amended findings ought to have been made in the interest of justice, and that there was no competent evidence in the record to support the findings as made.

Error to Clinton. (Daboll, J.) Argued February 11, 1891. Decided April 17, 1891.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Osborn & Mills,* for appellant, contended:

1. Findings of fact must be complete, and embrace all the facts deducible from the evidence that have a bearing upon the issue; citing *Adams v. Champion,* 31 Mich. 234; *Danaher v.*

*Ward*, 40 Id. 300; *Tuxbury v. French*, 41 Id. 7; *Cooley v. Ashley*, 43 Id. 458.

2. The burden of proof was upon the defendant to satisfy the court that the notes were received. as payment, and the question was one of intention. They were not given contemporaneously with the purchase of the goods, and were, therefore, in no sense a payment or a *prima facie* payment of the purchase price. If they had been received at the time the goods were sold and delivered, the fair inference would have been that they were taken in absolute payment, which presumption would be strengthened as to all paper made by third parties and indorsed by the debtor which was so turned out and received; citing *McIntyre v. Kennedy*, 29 Penn. St. 448; *Ford v. Mitchell*, 15 Wis. 304, 308; *Devlin v. Chamblin*, 6 Minn. 468; *Butler v. Haight*, 8 Wend. 535; *Monroe v. Hoff*, 5 Denio, 363; Benj. Sales, § 1081 (4th Amer. ed.); Dan. Neg. Inst. § 1260; but these notes, being turned out upon a precedent debt, are presumed to have been received as collateral security, which reception would not be conclusive evidence of an agreement between the parties to wait until their maturity before proceeding to collect the principal debt; citing *Whitney v. Goin*, 20 N. H. 354; *Wallace v. Finnegan*, 14 Mich. 170; *Chapman v. Clough*, 6 Vt. 123; Coleb. Secur. § 113.

3. If the receipt of the notes is held to amount either to a *prima facie* payment of the principal debt, or as a *prima facie* suspension of the remedy for its collection and an extention of the time of payment thereof, the plaintiff had the right to commence this suit, under the rule that where one gives an extension by taking the note of a third person on time, trusting to his debtor's representations of the solvency of the maker or the character of the paper, or if he receives the same as payment of a precedent debt, he may, on finding the representations false, sue on the original indebtedness without returning the notes, providing he is able on the trial to tender them back for cancellation, and to show that they are worthless, in which case the notes would be needed by the plaintiff as evidence on the trial; citing *Stubly v. Beachboard*, 68 Mich. 401; *Dayton v. Monroe*, 47 Id. 194; *Street v. Hall*, 29 Vt. 165; *Collamer v. Langdon*, Id. 32; *Miller v. Lumsden*, 16 Ill. 161; *Stone Co. v. Iron Works*, 124 Id. 623; *Pierce v. Drake*, 15 Johns. 475; *Willson v. Foree*, 6 Id. 110; *Markle v. Hatfield*, 2 Id. 455; *Holmes v. D'Camp*, 1 Id. 34; *Raymond v. Merchant*, 3 Cow. 147; *Nichols v. Michael*, 23 N. Y. 264; *Roberts v. Fisher*, 43 Id. 159; *Bank v. Gore*, 15 Mass. 75; *Bridge v. Batchelder*, 9 Allen, 396; *Martin v. Roberts*, 5 Cush. 126; *Eastabrook v.*

*Swett*, 116 Mass. 303; *Kephart v. Butcher*, 17 Iowa, 240; *Brewster v. Bours*, 8 Cal. 501; *Miller v. Woods*, 21 Ohio St. 485; *O'Bryan v. Jones*, 38 Mo. App. 90; *Davidson v. Bridgeport*, 8 Conn. 472; *Wright v. Lawton*, 37 Id. 167; *Whitney v. Goin*, 20 N. H. 354.

*Marston, Cowles & Jerome*, for defendant, contended:

1. Whatever may be the rule in an action on the case for fraud, it is fundamental that one who elects to take the remedy of rescission of a contract must return what he has received under the contract, and replace the other party, so far as possible, in the *statu quo ante;* citing *Crippen v. Hope*, 38 Mich. 344; *Hart v. Gould*, 62 Id. 262; and this rule applies when the party seeking to rescind has received the promissory notes of a third person as the consideration for the contract on his part. He must, in such case, restore or offer to restore the note before bringing suit; citing *Nichols v. Michael*, 23 N. Y. 264, and cases there cited; and this doctrine is affirmed expressly in *Gould v. Bank*, 86 N. Y. 75, 82.

2. At the time this suit was brought the great bulk of the paper received was held by the Wilkesbarre bank, where it had been discounted, and it did not come again into plaintiff's possession till after its maturity. When it became due and went to protest, the bank could have sued it, which right of action remained solely in the bank until it returned the notes to plaintiff, whose cause of action must have existed at the time it commenced this suit, and could not be transferred to it subsequently, as was done here; citing *Hovey v. Sebring*, 24 Mich. 232.

*M. M. High*, for defendant.

MORSE, J. The plaintiff is a corporation duly incorporated and existing under the laws of the state of Pennsylvania, and the defendant, at the time of the commencement of this suit, was doing business at Ovid, Clinton county, in this State, as the Scofield Buggy Company. August 15, 1887, the parties entered into the following written agreement:

"OVID, MICH., Aug. 15, 1887.
"Sheldon Axle Company have sold to Scofield Buggy Co., and the said Scofield Buggy Co. have bought of the said Sheldon Axle Co., 6,000 sets of axles. Specifications

as follows:  Specifications to be sent as wanted during the year prior to Sept. 15, 1888; all to be of standard quality, and delivered during the year 1888, up to Sept. 15. Shipments to be consigned and bills of lading to be sent to Scofield Buggy Co. Sellers not to be liable for damages from delays occasioned by strikes of workmen, fire, accidents at works, or other causes beyond the control of Sheldon Axle Co.  The buyer agrees to pay for said axles the following prices:  60 and 3 per cent. list, f. o. b. cars at Wilkesbarre, Penn.; freight allowed to Ovid, Mich. Terms of payment, 30 days.  Settlements by note or cash, as agreed, monthly (not later than the 10th day) for the previous month's shipments.

"The above agreement not to be changed except in writing.

      "Accepted,        SCOFIELD BUGGY CO.,
                            "Per F. A. SCOFIELD.

"SHELDON AXLE CO.,
            "J. J. MORSE."

Under this contract a large number of axles were shipped by plaintiff to defendant and received by Scofield. The plaintiff brought suit by attachment to recover an alleged balance due on account of such axles, in the circuit court for the county of Clinton, September 4, 1888.  The declaration was on the common counts in *assumpsit*, with a bill of particulars of plaintiff's demand.  The defendant pleaded the general issue, and gave notice, under such plea, of settlements at various times between the parties, in which the account of plaintiff up to the dates of such several settlements was paid partly by notes, and the balance in money in full of such account; also that by the turning over to the said plaintiff of certain notes of third parties in settlement of such account the time of payment of the same was extended until the maturity of said notes, which were indorsed by defendant, giving a list of said notes not due at the beginning of this suit.

A trial was had before the Honorable S. B. Daboll, circuit judge, without a jury, who on March 8, 1890, made the following finding:

"In this cause, the same having been tried by the court without a jury, I, the circuit judge before whom the same was tried, do find as follows:

"That the plaintiff on August 15, 1887, entered into an agreement with the defendant to furnish him 6,000 sets of axles, to be sent previous to September 15, 1888; that settlements for same were to be made by cash or notes; that the total amount of goods sold to the said defendant was ten thousand eight hundred and sixty-one dollars and forty-seven cents ($10,861.47); that the total payment made on same by the defendant up to the time of the commencement of this action was ten thousand eight hundred and seven dollars and twenty-eight cents; that there is due from the defendant to the plaintiff the sum of fifty-four dollars and nineteen cents.

"I find as a conclusion of law that the plaintiff is entitled to judgment against the defendant for the sum of fifty-four and 19-100 dollars ($54.19), with interest thereon from September 4, 1888, to date, and I order and direct judgment for that amount.

| | |
|---|---:|
| Principal | $54 19 |
| Interest | 4 88 |
| Total | $59 07 |

"S. B. DABOLL, Circuit Judge.
"*Dated March* 8, 1890."

The plaintiff by its counsel excepted to this finding, and afterwards moved the court for amended findings of fact in detail, which would more specifically show the issues of fact between the parties. The circuit judge appointed a day to settle said proposed amendments to the finding, and on November 12, 1890, entered an order, after hearing counsel, denying said amendments; to which denial the plaintiff took exception.

A brief statement of the controversy between the parties, as shown by the testimony taken on the trial, will at once show that the finding of the circuit judge was incomplete and insufficient, and that a further and amended finding ought to have been made in the interest of justice.

There was no dispute as to the number of axles sold to and received by defendant, or what was the price to be paid for them; nor was there any particular dispute as to the payments made in money or its equivalent. The whole material dispute was whether or not certain notes sent by defendant to plaintiff, and received and discounted by it, were received in absolute payment of so much of the indebtedness as the notes amounted to, less the discount. It is evident from the finding of the circuit judge that he must have found that all these notes were received in absolute payment; but from his finding alone it is not discernible that any notes were ever turned out by defendant to plaintiff, in payment of Scofield's indebtedness or otherwise.

A large mass of correspondence was offered and received in evidence, in fact nearly all the testimony was in writing, being letters that passed between the parties. As the case must go back for a new trial, we do not deem it necessary to set out this correspondence in this opinion.

The defendant attempts to deduce from the letters passing between the parties that the notes in controversy were received in payment, but we do not think so. There was nothing in the original agreement showing that notes of any kind were to be accepted in absolute payment of the axles to be sold. Settlements were to be made monthly "by note or cash, as agreed," but this did not bind plaintiff to accept any note or notes in payment of its account. March 20, 1888, the defendant wrote plaintiff that he was short of ready cash, but could offer customers' paper in settlement of account then due. Plaintiff replied, March 23, 1888, that the balance of defendant's account was $4,393.80 up to March 1, 1888, and that it would accept "customers' paper," not too much of any one party, the paper to be of parties that would be

acceptable to the banks, and discounted by them on its own merits regardless of plaintiff's indorsement;—

" That is, the parties to have commercial rating sufficiently good to satisfy our banks to do this; we will accept paper of this kind for the full amount,  *   *   * the same to be discounted by us, and you to pay the discount and cost of collection. We will do this under the circumstances, although we will say to you frankly that it is all we can possibly manage to carry the amount of business paper that it is necessary for us to carry from month to month in order to keep our business running, and that is of regular commercial paper coming to us in the regular way from our customers."

March 29, 1888, defendant sent plaintiff a note of J. H. Mahler & Co. for $715, saying:

"To-day we have sent you one piece of paper, which we trust you can use and credit to apply on account."

This note was protested when it came due, and plaintiff thereupon made a sight draft on defendant for the amount of such note. This draft was not paid by defendant, but afterwards Scofield sent other paper to take up and replace this protested and unpaid note of J. H. Mahler & Co. Other notes sent by defendant, under this arrangement, to plaintiff, were also protested, and not paid at maturity, and were replaced by other paper.

We are satisfied on reading the whole correspondence between the parties, and in view of the fact of defendant's sending new notes to replace those not paid when due, that the notes were not taken in absolute payment of defendant's indebtedness. It follows that the circuit judge was wrong in his finding, as there was no competent evidence in the record to support it.

It is also claimed by plaintiff that the notes turned out. to it, and held by plaintiff when this suit was commenced, were not the notes of the customers of the defendant,

but were accommodation paper, and worthless at that. There is much in the evidence to justify this claim. It is, however, contended by defendant's counsel that the taking of these notes at least extended the time of payment of the indebtedness, and that, therefore, the suit was prematurely brought; and also that suit could not be commenced to recover the original indebtedness before tender of the notes back to defendant. Two of the notes, amounting to $1,500, were past due, and had been protested for non-payment before the suit was commenced; and one note for $413 became due and was protested on the same day the action was brought. The other notes were not due at the time the writ of attachment was issued. As far as these three notes, amounting to $1,913, were concerned, the amount of the debt represented by them was due when this suit was begun. Two of the notes, representing nearly $1,000, were the notes of the defendant. All of the notes were returned to defendant before the trial of the case in the court below.

If the notes, as claimed by plaintiff, were not the notes of *bona fide* customers of the defendant, but were accommodation notes made for the purpose of fraudulently palming them off upon the plaintiff as the notes of customers of the defendant, then the plaintiff, upon the discovery of such fraud, had the right, although the taking of them in the first place may have extended the time of payment of the debt, to rescind or renounce any agreement, whether express or implied, that they should extend the time of payment, and move at once for the collection of its account; and, if the notes so received were worthless, it was not necessary to tender such notes back to defendant before the bringing of suit.

Whether or not the taking of these notes did extend the time of payment we do not deem it necessary to

determine from this record. As there must be a new trial, it will be best to let it be determined from the facts which may appear upon such trial.

The judgment is reversed, and a new trial granted, with costs of this Court to plaintiff.

CHAMPLIN, C. J., McGRATH and GRANT, JJ., concurred. LONG, J., did not sit.