## L. P. Rose, Appellant, v. Peter Eggers.

**Exchange of property:** REPLEVIN: RESCISSION: TENDER. In an equitable action to recover property given in exchange for other property a tender in the petition of a return of the property received is timely, and the commencement of the action is a sufficiently definite disaffirmance of the contract of exchange and election to rescind; but in a law action the plaintiff's right of recovery must have been perfect in this respect when the action was begun.

**Same:** WAIVER OF TENDER. On the rescission of a contract of exchange of property a formal tender of the property received by plaintiff may be waived; and to constitute such waiver it is only necessary to show that if the tender had been made it would have been unavailing. And where the defendant refused to take back the property, not however on the ground that plaintiff had incumbered it, it was not essential for plaintiff to make a new tender after relieving it of the incumbrance and before instituting his action.

**Same:** WAIVER OF TENDER: SUBMISSION OF ISSUE. Where a party undertakes to rescind a contract for the exchange of property and has no claim to the property received except by virtue of the contract, an offer to return the property received unless waived is a condition precedent to the right to maintain the action.

**Same:** EXCHANGE OF PROPERTY: FRAUD: RESCISSION. A contract for the exchange of personal property induced by fraud is voidable only, and the injured party may affirm it and sue for damages or he may disaffirm it and demand a return of the property with which he has been wrongfully induced to part, but if he elects to rescind he must return the property received.

**Same:** FORMER ADJUDICATION: EXCLUSION OF EVIDENCE: PREJUDICIAL ERROR. Plaintiff and defendant in this action exchanged horses and plaintiff sought to rescind the contract on the ground of fraud and brought replevin to recover the horse he transferred to the defendant. One of the grounds of rescission was that defendant did not own the horse traded to plaintiff at the time of the exchange. Defendant pleaded an adjudication in a replevin suit brought by a third person against plaintiff to recover possession of the horse in which plaintiff was successful, and no reply was filed to this answer. All evidence which tended to show that de-

fendant was not the owner of the horse was excluded because of the adjudication in the former suit. *Held,* that the question of whether there was an adjudication such as pleaded was in issue and the court should not have assumed an adjudication and excluded the evidence; and this error was not cured by the concession of counsel for plaintiff that in the former suit the third person claimed the horse under an alleged purchase from the person from whom defendant derived title, and that plaintiff held title, if any, under defendant, where it appeared that no pleading was filed by defendant in the former action and the plaintiff in that action was not present at the trial.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

SATURDAY, JULY 9, 1910.

ACTION in replevin resulted in a directed verdict for defendant and judgment thereon. The plaintiff appeals.— *Reversed.*

*Harding & Kahler,* for appellant.

*R. Shaw Van* and *Conner & Lally,* for appellee.

LADD, J.—The parties hereto exchanged stallions about February 20, 1906, that of plaintiff being a Goldenberry coach, named "General;" the defendant's, a percheron, known as "Bedford." They traded even, but subsequently plaintiff rued his bargain and brought this action to recover the possession of "General." After the introduction of the evidence, the jury was directed to return a verdict for the defendant, and the main question for our consideration is whether this was warranted by the record. The plaintiff alleged in the petition that he was induced to make the trade by defendant fraudulently representing that he was the owner of the stallion "Bedford" when he was not; that said stallion was sound when he was blind; that he

was a sure foal-getter when he was not such. This was denied by defendant who claimed damages for the wrongful detention of the coach horse. On the trial plaintiff testified that he had informed defendant that his eyesight was poor, and he would have to rely on him as to the soundness of his horse, and that defendant responded that the horse was all right in every respect and a good foal-getter. But the defendant testified his antagonist boasted of his ability as a horse trader; examined the stallion for himself, that no mention was made of condition and that to an inquiry whether the stallion was a sure foal-getter, he had responded that he had been pretty fair before, and they would drive over the stand and look at the mares bred and talk with their owners, and that afterwards plaintiff became satisfied.

Other evidence tended to show that "Bedford" was nearly or quite blind, and that this was known to defendant, and that with intent to deceive he represented otherwise and thereby induced plaintiff to exchange "General," of the agreed value of $1,250, even up for "Bedford," a horse the jury might have found unfit for breeding purposes and not worth to exceed $100. Indeed, this was the price defendant claims to have paid one Ayres for the animal shortly before. The plaintiff did not discover the condition of "Bedford" until March 19, 1906, when one Philpott demanded the horse, claiming to have purchased it of Ayres at the price of $100, and that it was blind. The two met defendant the next day and according to plaintiff's testimony he then told defendant that he wanted the coach horse back and would return the percheron, to which defendant replied: "I have nothing to do with that horse; he was my horse when I traded to you and he is your horse now, and Mr. Philpott has nothing to do with him, has no right to get him. You can't bring that horse back to my place. I don't want him. I traded him to you and he is your horse and you keep him. I forbid

you ever bringing that gray horse on my place. I don't want to forbid you from coming on my place, but I do forbid you from bringing the gray horse on my place." This was denied by the defendant who testified to offering a trade back. "Bedford" was then in plaintiff's possession, and if this was said by defendant no farther tender was essential. It appears however that subsequently Philpott instituted a suit in replevin in justice court, and on March 23d plaintiff caused to be served on defendant a written tender of the horse, subject to said replevin suit, and notifying him that he relinquished all claim to the horse to him and specified when, where and before whom said suit would come on for trial. Evidence was adduced tending to show that the replevin suit was collusive, but this was not necessarily the conclusion to be drawn therefrom. At the trial, the justice entered judgment, awarding possession of the horse to plaintiff, though Philpott had shipped him to his home in Taylor county, where he died some time prior to the trial. The defendant testified to having offered to trade back on the day of each of the tenders alleged, but this was denied by plaintiff.

The jury, then, might have found any tender essential to a rescission was waived in the conversation of March 20th, and that the written tender was sufficient, provided the situation was such that had there been an acceptance the plaintiff could have delivered him the horse. But two obstacles are said to have been in the way, a chattel mortgage on the horse and the replevin proceedings. After the trade plaintiff had executed a mortgage on the stallion "Bedford" to secure the payment of $530.94 to W. C. Hess. Before seeing defendant in the morning of March 20th, plaintiff arranged with Hess to satisfy this mortgage and accept other security in lieu thereof. This arrangement, however, was not carried out until April 6th following, when a satisfaction piece was executed and this action for the recovery of "General" instituted on the same

day. From this recital of the record, it is apparent that the evidence was sufficient to carry the issues on the merits to the jury, and the only questions involved on this appeal are whether plaintiff was in a situation to rescind and had taken the steps essential to effect rescission..

Had the suit been in equity, a tender of the return of the property in the petition would have been timely, and the commencement of the action for the possession of the stallion exchanged a sufficiently definite disaffirmance of the contract and the election to rescind. *McCorkell v. Karhoff*, 90 Iowa, 545; Olson v. Brison, 129 Iowa, 604. But in a law action the plaintiff's right of recovery must have been perfect when begun. The chattel mortgage had then been satisfied. Though Philpott had the horse "Bedford" in his possession, a judgment in the justice court had declared plaintiff entitled thereto and for all that appears he might have enforced this judgment by process at any time. The plaintiff then was in a situation to restore the property received when the action was begun, or at any time thereafter until the stallion died. That defendant was advised of plaintiff's election to rescind conclusively appears, but it is argued that the tender of the return of the property was ineffective in that (1) it was incumbered; (2) was involved in the replevin suit in the justice court; and (3) there was not an actual tender.

1. EXCHANGE OF PROPERTY: replevin: rescission: tender.

That a formal tender of property when exacted by law may be waived is too well settled to require the citation of authority. To constitute such a waiver all necessary to be shown is that had the tender been made it would have been unavailing. The law never exacts anything as a mere matter of form or idle ceremony. If, as the jury might have found, defendant, after being advised of plaintiff's election to rescind, forbade him to return the stallion or to bring

2. SAME: waiver of tender.

him on his place to have offered to do so would have been idle and unnecessary. As will be observed by reference to the testimony quoted, the alleged refusal to take the horse back was not on the ground that he was incumbered, and for this reason, upon the satisfaction of the mortgage, it was not essential to make a tender of the horse anew before instituting the action.

In *Olson v. Brison,* 129 Iowa, 604, an admission in the course of the trial that the property would not have been taken had it been brought back was held enough to obviate the necessity of a tender having been made. Much of the argument of counsel is devoted directly to the question of whether a party, who has fraudulently procured the execution of a contract, is entitled to an offer of restoration as a condition precedent to rescission. That a tender is unnecessary where the party undertaking to rescind is entitled to retain the money or property received, even though the contract be set aside, appears from *Howard v. McMillen,* 101 Iowa, 453, and *Dillon v. Lee,* 110 Iowa, 156. See *O'Brien v. Railway,* 89 Iowa, 644.

But where the party undertaking to rescind has received money or property under the terms of the agreement sought to be avoided, to which he has no claim other than by virtue of the contract, the rule is of universal application that an offer to return, unless the necessity therefor has been obviated by conduct of the other party constituting a waiver, is essential as a condition precedent to the maintenance of an action at law for the recovery of property alleged to have been fraudulently procured. Bishop on Contracts, section 679; Beach on Modern Law of Contracts, 792; *Perley v. Balch,* 23 Pick. (Mass.) 283 (34 Am. Dec. 56); *Sheldon Axle Co. v. Scofield,* 85 Mich. 177 (48 N. W. 511); *Masson v. Bovet,* 1 Denio (N. Y.) 69 (43 Am. Dec. 651); *Balue v. Taylor,* 136 Ind. 368 (36 N. E. 269).

Such a contract is voidable only. The injured party

3. SAME: waiver of tender: submission of issue.

may confirm it and sue for damages if he chooses, or he may disaffirm it in which event fraud destroys the contract *abinitio,* and no reason can be assigned for permitting the party undertaking rescission to retain the property received and at the same time demand the return of that with which he had been wrongfully induced to part. In *Hendrickson v. Hendrickson,* 51 Iowa, 68, on which appellant relies, the instruction, the refusal to give which was held to be reversible error, was asked by the alleged wrongdoer, and, as explained in *Citizens' Bank v. Barnes & Sons,* 70 Iowa, 412, the ruling was on the ground that he was entitled to as much as he had requested at least; the court being content not to say whether he was entitled to something better. The case is again referred to in *National Imp. & Const. Co. v. Maiken,* 103 Iowa, 118, as announcing an exception to the general rule exacting an offer to return, evidently without having noticed the explanation in the later decision, but this was dicta and in no wise essential to the determination of the question under discussion. An offer to restore the stallion, unless waived, was essential as a condition precedent to the maintenance of the action, and whether there was such waiver was put in issue by the evidence. The court erred in not submitting the cause to the jury.

*4. SAME: exchange of property: fraud: rescission.*

II. One of the grounds of rescission alleged in the petition was that defendant did not own "Bedford" at the time of the trade. An adjudication in the replevin suit of this issue was pleaded in the answer. No reply was filed. On objection all evidence tended to show that defendant was not such owner was excluded, because of the adjudication pleaded. This was manifest error for whether there was an adjudication such as pleaded was in issue, and until that had been settled the court ought not to have assumed there to have been an adjudication. But counsel

*5. SAME: former adjudication: exclusion of evidence: prejudicial error.*

for plaintiff, in response to questions from the bench, in effect conceded that in the replevin suit Philpott claimed the horse under an alleged purchase of one Ayres, and that plaintiff held title, if any he had, under defendant, who also claimed to have purchased from Ayres. But no pleading was filed by the defendant therein, and Philpott was not present at the trial. For all that appears, the horse may have been ordered to be returned owing to Philpott's omission to introduce any evidence of ownership, and, if so, there was no adjudication bearing on the title plaintiff (defendant therein) may have acquired in the trade with defendant. The error in the rulings on the admissibility of evidence, then, was not obviated by the admissions of counsel or subsequent proof. It will be time enough to say whether the plea was good when that question is presented by the record.

Other questions argued are not likely to arise on another trial. *Reversed.*