W. J. SCHANDELMEIER, Appellee, v. CLARENCE A. ANDERSON et al., Appellants.

**MORTGAGES:** Absolute Deed as Mortgage—Evidence. Evidence re-
1 viewed, and held to show that an absolute deed was executed as a mortgage, and that the defendant grantee was not an innocent party.

**TENDER:** Excuse for Failure to Make. A party need not make a
2 tender when his adversary would have refused it, had it been made.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

NOVEMBER 14, 1922.

SUIT to have a deed decreed to be a mortgage, and for an accounting of profits realized on the sale of the property. The court found, and entered decree accordingly, that the deed in question, executed by plaintiff, was, in fact, a mortgage, and in an accounting, awarded judgment in favor of plaintiff for $1,587.32, from which decree and judgment, defendants appeal. Facts appear in the opinion.—*Affirmed.*

*Dyer, Jordan & Dyer,* for appellants.

*T. J. Mahoney, W. W. Goodykoontz,* and *F. L. Mackey,* for appellee.

ARTHUR, J.—The property involved consists of two lots in the city of Boone, Iowa, Lots 15 and 16 in Block 23, of which plaintiff was the owner, prior to the transactions involved in this action. On December 15, 1916, Schandelmeier and his wife executed and delivered to appellant Anderson a mortgage on these lots for $1,500, due in two years, bearing 7 per cent interest. No part of the $1,500 loan was paid directly to Schandelmeier. The loan was obtained by Schandelmeier for the purpose of raising money to redeem the property from tax sale, and for the payment of judgment liens on the property and other items of debt which Schandelmeier owed, amounting to $1,079.67. The balance of the $1,500 loan was held by Anderson for the payment of a judgment in favor of E. H. Seiling against Schandelmeier, if it became necessary to pay such judgment to protect the mortgage given to Anderson, the judgment being senior to the mortgage. The judgment became outlawed, and never was paid.

1. MORTGAGES: absolute deed as mortgage: evidence.

On January 11, 1918, Schandelmeier and his wife executed to appellant Goeppinger a deed to the said lots. Over this deed arises the matter in dispute: that is, whether Schandelmeier and his wife had the understanding with Anderson, and through Anderson with Goeppinger, that they were to be permitted to redeem,—which presents the question of whether the deed was, in fact, a mortgage, given to secure the mortgage loan resting on the property.

Schandelmeier claims that, when the deed was made, it was orally agreed between him and Anderson, with whom the dealing was had, that he was to be permitted to redeem the property by paying the indebtedness theretofore represented by the mortgage on the premises, with interest and taxes and interest on taxes paid by Anderson. In other words, Schandelmeier claims that the deed given was merely a different form of security from the mortgage theretofore resting on the property, and that he could redeem said premises and secure a reconveyance thereof from Anderson, upon redemption within a reasonable time, by paying the amount that Anderson had invested in the premises,

with interest. Anderson claimed that he made no such agreement. The Schandelmeiers had no talk whatever with appellant Goeppinger before or at the time of making the deed. Their dealings were with Anderson. They claim that they thought that the deed they executed was to Anderson; that they did not read the deed, and did not know until later that it was to Goeppinger. On or about the date of the deed from Schandelmeier and wife to Goeppinger, January 11, 1918, Goeppinger paid Anderson $1,162.68, being the amount then owed on the mortgage, and taxes which Anderson had paid; and it was then agreed between Anderson and Goeppinger that, when Goeppinger sold the property, he would pay to Anderson one half of the profit. On August 15, 1919, Goeppinger sold the property for $3,200, and paid to Anderson $932.74, as Anderson's share of the profit, and retained as his own share of the profit, $1,065.87.

Some time before Goeppinger transferred the property to Albert J. Carlson, Schandelmeier, his wife acting for him, approached Goeppinger and sought to make redemption of the property. Goeppinger refused to permit redemption, and this suit was begun on August 26, 1920.

The trial court made specific findings of fact as follows:

"(1) That the said deed, executed by plaintiff and his wife unto the said defendant Charles H. Goeppinger, and covering Lots 15 and 16 in Block 73 in Boone, Iowa, executed January 11, 1918, was, in truth and in fact, a mortgage, and given for purposes of security.

"(2) That the reasonable market value of the premises above described was, on said date, the sum of $2,750.

"(3) That the means used by defendants to secure the said deed were unfair and inequitable, and such as cannot be sanctioned by a court of equity; and the equities are, therefore, with the plaintiff.

"(4) That the plaintiff was and remains the equitable owner of the premises above described, and if it were not for the matters hereinafter set out, he would be entitled to make redemption of the same.

"(5) That the premises above described have been transferred to Albert J. Carlson, Raymond F. Carlson, and Elmer A.

Carlson, and said parties are innocent holders thereof for value.

"(6)    That, by reason thereof, to give relief unto the plaintiff, a personal judgment should be rendered in favor of the plaintiff and against the defendants.

"(7)    That, upon receiving the deed from plaintiff, the defendant Charles H. Goeppinger paid the defendant Clarence A. Anderson $1,122.58, being the amount then owing on the mortgage; and the taxes for the year 1917, amounting to $40.10 were paid by the defendants,—making a total sum of $1,162.68 to be credited to the defendants on the value of the property, as above found, leaving the sum of $1,587.32 unpaid and owing plaintiff."

The court entered judgment in favor of the plaintiff against the defendants in the amount of $1,587.32, from which judgment this appeal is taken.

We have examined the record carefully, and we think the findings of the lower court have ample support in the evidence. When the deed in question was executed, Goeppinger was not present, and there had been no talk about the transaction between Goeppinger and Schandelmeier or Mrs. Schandelmeier. Schandelmeier and his wife did not sign the deed at the same time, but perhaps did sign it on the same day. When Schandelmeier signed the deed, and had whatever talk he and Anderson had concerning the transaction, only he and Anderson were present. Also, when Mrs. Schandelmeier signed the deed, only she and Anderson were present. The testimony of Schandelmeier and his wife and Anderson as to what was said is in direct contradiction. Anderson simply says, "There was no talk about this deed being given as security for any purpose;" that he did not tell the Schandelmeiers that they could redeem the property. Schandelmeier says that, when he signed the deed and gave it to Anderson, Anderson told him he could redeem it by paying what he had in it and interest and taxes. Schandelmeier says that he does not think he knew that Goeppinger was named as grantee in the deed, but that he first found that out when his wife went to redeem the property. Mrs. Goeppinger testified that, when she signed the deed, Anderson told her that they could redeem the property at any time.

The record pictures quite a difference in the business ca-

pacity of the parties. Goeppinger was cashier of the City
Trust & Savings Bank of Boone, and Anderson was the assist-
ant cashier. These two bankers seem to have been carrying on
some loan and real estate business on their own behalf. They
were men of ability and experience in business. Schandelmeier
was a man without business experience, except in the saloon
business. He had kept a saloon under the Mulct Law, and after-
wards sold near beer in Boone. He was not a good business
man. He had allowed judgments to be entered against him,
and was in the habit of pledging his property, to secure his in-
debtedness, by executing deeds instead of mortgages. About
the time of the transaction here involved, Anderson paid out
for the Schandelmeiers on a contract of purchase of what is
called the "Cedar Street property," and paid for them certain
other debts, and took a deed from the fee owner, one Kastner,
to secure payment of the money so furnished to the Schandel-
meiers. Schandelmeier was at least careless in business trans-
actions. He inherited the property here involved.

Concerning the attempt of the Schandelmeiers to redeem
the property, in pursuance of their understanding, as they
claim, that the deed executed by them was not an absolute con-
veyance, but was for the purpose of securing the payment of
their indebtedness, and that they had the privilege and right
to redeem by paying the amount of their indebtedness, with in-
terest and taxes, Mrs. Schandelmeier, acting for her husband,
approached Goeppinger and told him that they could now ar-
range to redeem the property, and that they wanted to make re-
demption. Goeppinger refused to allow the Schandelmeiers to
redeem. He told Mrs. Schandelmeier that he knew nothing
about any redemption of the property; that he held the deed to
it; and that there was no understanding of any kind about re-
demption.

Both parties offered testimony as to the value of the prop-
erty. As usual, there was quite a divergence. We have exam-
ined the testimony carefully on this point, and conclude that
we can do no better than to adopt the finding of the trial court.

The transaction of making the deed in question seems to
have been introduced by Schandelmeier's approaching Anderson

and wanting to borrow some more money. As Anderson puts it in his testimony:

"On January 11th or 12th, Schandelmeier came into the bank and told me he wanted some more money, to clean up the bills."

It seems to have been on the property involved in this suit that he wanted to borrow more money. It is not claimed by Schandelmeier or Anderson that Schandelmeier wanted to borrow money on other property. Other property was mentioned in the talk. Anderson told Schandelmeier that, if he got rid of the loan on the Allen Street property (the property involved in this suit), he could make him a loan on the Cedar Street property, a lot which Schandelmeier had purchased on contract from one Kastner.

At the time the deed was made to Goeppinger, the note and mortgage in the $1,500 loan were not delivered to the Schandelmeiers. They were passed along by Anderson to Goeppinger. Anderson says that, when Goeppinger paid him the amount which he (Anderson) had invested in a deal, he marked the note and mortgage "canceled." Concerning that matter, Goeppinger testified:

"I had a sort of understanding with Anderson that this mortgage was not to be released at the time the deal was made. I told him I would hold it. My thought was that, if a buyer came along and wanted time on it, I could sell it subject to the mortgage. The note and mortgage were not canceled by this deal that I made that day. I have no recollection as to when the word 'paid' was written across the note and mortgage, but it would be my judgment that it was when the mortgage was released of record. I did not turn these papers back to Schandelmeier when they were paid, because they pertained to the property when I assumed it. They were, you might say, outstanding paper. The mortgage was not canceled until March 4, 1919."

Anderson's explanation of Schandelmeier's executing a deed to him of the property in question, the Allen Street property, without privilege of redemption, as he claims, was that Schandelmeier needed some money, and approached him for an additional loan; and that he told Schandelmeier that he could

not make him the loan on the property, but that, if he "got rid of this loan, I could make him a loan on the Kastner property, and he wanted to know if I would take a deed, and I told him 'no.' I told him I would see if Mr. Goeppinger would take it. Schandelmeier said there was talk about repaving, and the lots were worth the mortgages; and if the new paving went through, it would be all it was worth. If he gave a deed, he wouldn't be obligated any more. He thought the place was not worth any more, by the time the paving came in. He did not talk exactly about how much the place was worth, but he was talking about the paving, and he said he would give a deed for just what I had in it."

Anderson further testified:

"They didn't have to give a deed to the place. The interest was paid up almost to date, and the payments on the Cedar Street property were right up to date, and he wanted to get something around $530 or $540. Money was not close at that time. A loan of $1,500 on a $4,500 property [referring to the Cedar Street property] was a good loan. I cannot figure any explanation why Schandelmeier wanted to make the loan from me."

Anderson further testified:

"It is a fact that Schandelmeier got nothing for that deed. All he got from me or Goeppinger for that property was the settlement of the Johnson judgment, $625, and payment of courthouse costs in the Mann case, $8.25, and the Clark judgment of $233.11, and $15 to his attorney. He got bills paid in the aggregate of $1,079.67. Part of this, $131.76, was property redeemed from tax sale, that he never got any further use from, and part of the bill was an abstract deal of $64.50, for property that he never got any use of; and the other bills were recording the deeds and mortgage," etc.

Further, Anderson testified that Schandelmeier said he would give the property to anybody if he could get a loan of $1,500 on the Cedar Street property, to include the amount that was to be paid to pay out the contract of purchase on the Cedar Street property. Anderson said that he knew the property was worth about $2,000. Anderson made the Schandelmeiers a loan on the Cedar Street property, which Anderson says was for

$1,500. Schandelmeier denies that the loan was in the amount of $1,500, and says that it was only $950, the amount required to pay out on the Kastner contract.

While Anderson's contention that Schandelmeier made an absolute deed to the Allen Street property for the purpose of securing a loan on the Cedar Street property, considered by itself, is plausible, several other circumstances impeach it, we think. When the deed was made, the note and mortgage were not surrendered to Schandelmeier. Anderson says that, when Goeppinger paid him the amount he had invested in the property, he canceled the note and mortgage by marking them paid. But it appears that he passed the note and mortgage along to Goeppinger, and Goeppinger assumed their payment in the deed, and Goeppinger testified that it was his intention that, when he sold the property, the purchaser should assume the mortgage; and the mortgage was not canceled of record until after Goeppinger sold the property to the Carlsons. It would seem from such transaction that the note and mortgage were not marked paid at the time the deed was made, and not when Goeppinger settled with Anderson. Anderson admits that the property was worth about twice what he had in it when the deed was made. Anderson also admits that Schandelmeier could have made a loan on the Cedar Street property for the amount for which Anderson claims he wanted a loan. No reason appears for the Schandelmeiers' parting with the property in the manner claimed by Anderson. Anderson gives no reason except that they made the deed for the purpose of securing a loan on the Cedar Street property, thereby parting with their property worth about twice the amount of the debt, according to Anderson's valuation of the property, and nearly three times the amount against the property, according to the finding of the court. Anderson testified that Schandelmeier even paid the interest on the mortgage up to the time the deed was made, and that he indorsed it on the note. We think it somewhat persuasive in favor of the contention of the Schandelmeiers that Schandelmeier had been in the habit of allowing his bills to accumulate, and that he sometimes allowed judgment to be entered thereon, and then pledged his property, to secure payment, by executing deeds instead of mortgages. It seems that he

always managed finally to redeem his property. Anderson knew of Schandelmeier's doing this. Indeed, at the same time that the deed in controversy was executed, Anderson took from the Schandelmeiers the deed to the Cedar Street property, as a mortgage. The deed was made direct from Kastner to Anderson.

We have set out only salient parts of the evidence. We have carefully examined all of the evidence. We arrive at the conclusion that there was an oral contract, as claimed by the Schandelmeiers, of their right to redeem the property in question; that the contract was established by as clear and satisfactory evidence as usually obtains in cases where oral evidence and circumstances are relied upon to show a deed to be a mortgage. We think that undoubtedly there was an understanding between the Schandelmeiers and Anderson that the Schandelmeiers could redeem the property.

It is contended that, in any event, Goeppinger was an innocent purchaser of the property in question. In the light of the circumstances shown in evidence, we scarcely think that can be true. Anderson and Goeppinger operated together in real estate deals, under an arrangement by which Anderson furnished deals and Goeppinger furnished the money. In the present transaction, Anderson furnished the opportunity to handle the property, and Goeppinger furnished the money, and they divided the profits. We think it must have been apparent to Goeppinger that the Schandelmeiers would not make an absolute deed to their property for the payment of debts for less than half what the property was worth, according to his estimation of its value. Goeppinger testified that, in his judgment, the property increased in value about $700 between the time he got it and the time he sold it, thereby conceding that the property was worth $2,500 at the time he got it for less than half that amount. Goeppinger did not have the mortgage canceled, but treated it as coexistent with the deed. He assumed the mortgage in the deed, and says he intended, when he sold the property, to have the purchaser assume the mortgage, and that he did not have the mortgage canceled until after he conveyed to the Carlsons. Goeppinger and Anderson entered into a written contract to share in the profits arising from the sale of the property, and they divided the profits. This written contract was destroyed,

but the profit sharing was admitted by them. It would seem that Goeppinger and Anderson were partners in the deal, or at least that Anderson was the agent of Goeppinger; and we think that Goeppinger would be bound by the agreements of Anderson in this transaction. *National Impr. & Const. Co. v. Maiken,* 103 Iowa 118; *Casady v. Manchester Fire Ins. Co.,* 109 Iowa 539; *Fleishman v. Ver Does,* 111 Iowa 322.

Appellants urge that no legal tender was made by the plaintiff to redeem the property, and that, without such tender's being made, the plaintiff cannot maintain this action. It is undisputed that Mrs. Schandelmeier, in behalf of appellee, told Goeppinger that they could redeem the property; whereupon Goeppinger said that he knew nothing about any arrangement for redemption, and would not permit redemption. Redemption being refused, formal tender of the money necessary to redeem the property was waived. Had the tender been made, it would have been unavailable. *Rose v. Eggers,* 148 Iowa 306.

2. TENDER: excuse for failure to make.

Decree and judgment of the court below are affirmed.— *Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.