W. J. STECKEL, Appellant, v. HENRY SELIX et al., Appellees.

**TENDER:** **Sufficiency.** An immediate *ability* and *intent* to discharge a claim, and an offer to the creditor accordingly, but without manually displaying the draft, check, or money, constitute a tender, when the creditor meets the offer with an *unconditional refusal to accept the amount.*

*Appeal from Davis District Court.*—D. M. ANDERSON, Judge.

APRIL 1, 1924.

REHEARING DENIED JUNE 28, 1924.

ACTION in equity, to foreclose a certain described second mortgage executed by Henry and Clara Selix to W. J. Steckel, and assumed by defendant F. A. Miller. A decree was entered March 20, 1922, foreclosing the rights of the Selixes, and the cause was continued for hearing as to the defense of defendant

F. A. Miller. F. A. Miller claims to have made a tender on March 5, 1921, of all moneys owing under the mortgage, and a keeping of the tender good. He had in his answer paid the sum into court. The court found the sum paid in to be the full amount due the plaintiff from Miller, and entered a decree for defendant F. A. Miller. A new trial was granted by the district court, upon motion of the plaintiff, because of newly discovered evidence, which was a letter written by Miller to plaintiff, dated March 15, 1921, tending to show that any tender made was not kept good. In the meantime, the money in court, plaintiff had the property sold, to satisfy the judgment against the Selixes, and a certificate of purchase was issued by the sheriff of Davis County to the plaintiff. On the new trial, the court found the tender good; ordered the plaintiff to accept as full satisfaction of his mortgage the sum then in court; ordered the sale set aside and the sheriff's certificate canceled; and quieted title in the premises in defendant F. A. Miller, as against the plaintiff. From this decree the plaintiff appeals.—*Affirmed.*

*T. A. Goodson* and *T. P. Bence,* for appellant.

*Buell McCash,* for appellee.

DE GRAFF, J.—On October 12, 1920, defendant-appellee F. A. Miller made a written contract with defendants Henry and Clara Selix for the purchase of a tract of land described in the mortgage involved in this cause, and then owned by the Selixes. The purchase price was $7,000, to be paid as follows: An automobile, agreed value of $900, immediately delivered; a property in Unionville, agreed value $900; Selix's account at Miller's store, amount undetermined; to assume mortgages, a first of $2,500 to the Mutual Benefit Life Insurance Company of Newark, New Jersey, and a second to Steckel, both in the agreed amount of $3,480; the balance, all but one dollar, paid down, to be paid March 1, 1921, upon delivery of a warranty deed from the Selixes. Plaintiff Steckel had notice of this contract as soon as it was made. At the time, there was on record in Davis County a judgment against the Selixes in favor of B. O. Abro-

gust and G. A. Norris in the amount of $388.40, unknown at that time to F. A. Miller; but such is not material to the issues on this appeal.

In February, 1921, Miller, Steckel, and the Selixes met in Bloomfield, to determine what was due on the settlement to be made March 1, 1921.

Beyond this point, the facts are in dispute, and, aside from incidental questions of law, these disputed facts involve this appeal. The plaintiff in his petition claims that the amount of his mortgage was $1,944.20 plus $200, making a total loan, as of the date of the mortgage, December 2, 1918, of $2,144.20. He also claims that it covered future advances, and that the total of such advances and original amount was $2,447.91, on date of suit. Neither party seems to have raised an issue of law as to the priority of the advances over the equitable title of Miller under his contract. The equitable title to the property passed to F. A. Miller on October 12, 1920, and any discretionary advances made by Steckel after that date would be inferior to Miller's rights, as he had notice of Miller's contract. There is no evidence tending to prove whether the amount above the sum $2,144.20 was advanced by the plaintiff before the Miller contract or afterwards.

It is defendant F. A. Miller's contention that he and Steckel determined in February that the amount due Steckel on March 1, 1921, would be $2,084.21, and that Steckel told him that was the amount.

When it came to making settlement on March 1, 1921, and giving a warranty deed, there was no balance of cash owing to the Selixes, and for some reason, they refused to perform. The defendant assigns reasons for the refusal. In view of the issues raised, we deem it material only to say that the Selixes refused to perform, and that Miller sued them on March 5, 1921, for specific performance. Defendant F. A. Miller contends that, on March 5, 1921, he tendered to Steckel a draft for $2,086.51, being the amount due under the mortgage on March 1, 1921, plus interest to date at 8 per cent; that on that day he commenced suit against the Selixes for specific performance; that Steckel refused the tender, not assigning as his reason the form of the tender, but

"that he couldn't do it;" that, on March 21, 1921, Miller sent his father as his agent to Steckel with a draft for $2,100, who offered to pay all due, with interest to date, and take an assignment of the mortgage; that Steckel refused this. The evidence clearly shows that F. A. Miller was able at all times to pay, and that he had enough funds in the Unionville bank to cover the payment.

Steckel contends that there was no tender on March 5th of any amount; that the sum due under the mortgage on that date was more than $2,084.21; that he did not represent in February what sum was to be due on March 1st; and that, if there was a tender, it was not kept good.

The issues, then, are: (1) What sum was due Steckel under the mortgage on March 1, 1921? (2) Was there a tender of that amount? (3) Has the tender been kept good?

(1) The preponderance of the evidence establishes that the amount due on March 1, 1921, to Steckel under the mortgage was $2,084.21. All the circumstances in the evidence point to this as the correct conclusion. F. A. Miller testifies emphatically that Steckel told him in February, 1921, that that would be the amount due on March 1st. Steckel does not emphatically deny that he told Miller the amount, but he "doesn't think he did." Mr. Steckel recalls in his testimony that Miller and the Selixes called at his office the latter part of February, to figure the amounts due all parties under the contract. He says they allowed $900 on a car, $900 on a property in Unionville; and, after some canvassing of the Selix account at Miller's hardware, they agreed that the sum of $615.79 was the indebtedness due Miller from Selixes on the account. Steckel testifies that the statement of $1,084.21, if he would loan Miller $1,000, or $2,084.21 if he did not make the loan, was the statement of the amount due from Miller to Selix after deducting the car, $900, the lot, $900, the account, $615.79, and the first mortgage, $2,500, from the agreed purchase price of $7,000, and that he did not say that $2,084.21 was the amount due under the mortgage. From his testimony, he expected to receive that sum from Miller and make his settlement with the Selixes. It would be singular indeed if Miller, knowing that his contract called for his assum-

ing mortgages to the amount of $3,480, should pay over to Steckel the entire balance due, $2,084.21, when his contract for a mortgage to Steckel was $3,480 less $2,500, or $820. Steckel must either have led Miller to believe his mortgage was for $820, or he must have told him what it was. It would be unusual in one settling a real estate transaction wherein he had assumed a mortgage, not to ascertain what the amount due under it was. The circumstances all lead to corroborate Miller's testimony that Steckel, sometime in February, 1921, told Miller that the amount due under the mortgage was $2,084.21.

However that may be, we conclude from the evidence that such was the amount due on that date. The default judgment taken against the Selixes on the foreclosure was $2,462.60, as of March 20, 1922. By authority of plaintiff, there was credited thereon $198.33, "leaving the principal of this judgment $2,264.27 as of March 20, 1922." Plaintiff admits in his testimony that there was a mistake in figuring the amount due when the default was taken. The interest on $2,084.21, compounded semiannually from March 1, 1921, to March 20, 1922, plus the principal sum, is exactly $2,264.27, the amount of the default judgment.

Considering also that the Selixes were present when the alleged statement of the amount due under the mortgage was alleged to have been made, and considering that they were, throughout the trial, witnesses on behalf of the plaintiff, the fact that neither was asked to corroborate Steckel's denial has some weight. The preponderance of the evidence shows that the amount due on March 1, 1921, was $2,084.21.

(2) Did F. A. Miller tender the amount due on March 5, 1921, to plaintiff?

Besides F. A. Miller's testimony describing the trip to Bloomfield and making the tender, defendant is corroborated by the production of a draft in the sum of $2,086.51, being $2,084.21 plus five days' interest at 8 per cent. The draft was identified by himself, and by the officers of the bank at Unionville. They remembered definitely the date it was drawn. Cashier Dukes went to Bloomfield with Miller, and remembered hearing Mr. Steckel on that day refuse to make an assignment of the mort-

gage to Mr. Miller. All the evidence points to the tendering of the draft to Steckel on March 5, 1921.

It is not quite certain from the record that Mr. Miller produced the draft from his pocket and placed it in Mr. Steckel's sight. The only denial Mr. Steckel makes is that he did not see the draft. In view of the law of the case, presently stated, we deem it immaterial to decide whether the draft was taken from Mr. Miller's pocket or not.

(3) Was the tender kept good? There is only one circumstance in the evidence that tends to cast a doubt on Mr. Miller's testimony that he at all times kept his tender good. That is the letter written by F. A. Miller to Mr. Steckel on March 15, 1921. It is as follows:

"Unionville, Iowa
"March 15, 1921

"Mr. W. J. Steckel
"Bloomfield, Iowa
"Dear Sir:

"I have your letter relative to the mortgage on Selix's farm and am making arrangements to take care of it and hope to be able to do so the last of this week or not later than the first of next week.

"Yours truly,
"F. A. Miller"

Viewed in the light of Mr. Miller's corroborated explanation, this letter is consistent with the tender made and the keeping it good. Mr. Miller testified that he is the only embalmer in Unionville; that he had been spoken to by a patron about waiting upon his father, who was expected at any moment to pass away, and was keeping himself in readiness for a call. In view of these facts, defendant did not wish to promise what date he could send someone to Bloomfield. His father was employed in defendant's store, and they must wait for a day when the father could be spared for the trip. The letter which Steckel had written Mr. Miller indicated that he was ready and willing to accept the money tendered, and the only "arrangements to take care of it" were procuring someone to go to Bloomfield to see that the

proper assignment of the mortgage was made. Mr. Glenn Liggett, cashier of the bank at the time he testified, and assistant cashier at the date of the instant transactions, testified that, at any time from March 21st to May 30th, Mr. F. A. Miller's check would have been honored at his bank to the amount of $3,000.

Mr. J. E. Miller describes his going for his son to Bloomfield with a draft, and offering Mr. Steckel the money on March 21, 1921, as Mr. F. A. Miller had promised in his letter of March 15th. He is corroborated in all he says by the testimony of Mr. Glenn Liggett, the check F. A. Miller drew to purchase the draft, the canceled draft itself, the letter given him by his son as an introduction and authority to act, and the draft of a blank assignment taken along for Steckel to sign. J. E. Miller related his conversation, his offering to pay the money, and the admission by Steckel that the amount was $2,084 on March 1st, and then something about $2,090; that Steckel wanted Miller to take over some "sale notes" the bank held as collateral for another note to Selix, but he makes it clear that Steckel made no objection to the form of the tender. J. E. Miller testified:

"Steckel said he had about $600 in sale notes which had to be paid before he would settle the second mortgage. I made the proposition to Steckel, if he would release the second mortgage of $2,095 and surrender the notes, that the matter might be settled that way, and I would give him a draft to more than cover it. Told Mr. Steckel if he would indorse the sale notes we could probably make a settlement that way. He wouldn't do it. I got warm, and said to Steckel: 'If I would pay $200 more than over and above the amount of this mortgage, it could be settled.' He said, 'Yes, sir.' * * * I told him I would turn this draft over to him upon the execution and delivery of the assignment and the notes that were given, or the legal release of the mortgage, and he wouldn't do it."

Viewing the facts in this light, certain questions of law demand brief attention. In the first place, a tender of the amount due does not satisfy the debt, but operates to stop the running of interest. If it is not accepted, it must be kept good. That is to say, the one making the tender must hold himself in readi-

ness to pay the amount within a reasonable time, should the offeree decide to accept it.

When a party proposes to pay another the amount of the claim, and is advised by the latter that it will not be accepted, such offer amounts to a tender, although the money is not at the time produced, if the person making the offer could and would have produced it, had the other party been willing to accept it. The law does not require a person to do a vain or useless thing. *Blackman v. Carey,* 192 Iowa 548; *Schandelmeier v. Anderson,* 194 Iowa 768. An actual exhibition of the money is unnecessary, where it would avail nothing. *Steckel & Son v. Standley,* 107 Iowa 694. A party waives his right to insist that the money be produced when he indicates that he will not receive it. *Rose v. Eggers,* 148 Iowa 306; *Sherwood v. Greater Mammoth Vein Coal Co.,* 193 Iowa 365; *Olson v. Brison,* 129 Iowa 604.

It is not material that the amount tendered is not in the form of legal tender, if no objection is made thereto for that reason. A draft is good tender if the objection to taking it is not based upon the form in which the money is offered. This is on the ground that, in event of exception thereto, the party making the tender should have the opportunity of getting the money and tendering it, instead of its apparent equivalent, the draft or check. We do not construe the language of the conversation at the time that the tender of the draft was made as a conditional tender. When the assignment of the notes was suggested, plaintiff gave as a reason in refusing to execute same that "he wouldn't give Frank Miller a club to fight Henry Selix with." The essential element in dispute was the amount due, together with the claim of Steckel that: "Before this second mortgage matter could be settled, F. A. Miller would have to buy the sale notes." Miller further testified:

"I then suggested that Steckel accept the draft and release the mortgage and assign the note secured by the mortgage, but he wouldn't do that, either."

It is the duty of a mortgagee, prescribed by statute, upon being paid the amount due, to release the mortgage. Defendant Miller had the right and was obligated to pay: the only right of Steckel was to receive payment. Under the circumstances of

this case, the defendant was justified in asking for an assignment of the notes, for the reason that at that time Miller's suit for specific performance against the Selixes was pending. There was a possibility of Miller's failing to get performance. Steckel knew this. He simply refused to accept the draft for reasons stated by him, and not by reason of any conditions attached to the tender. Defendant offered to turn the draft over to him "upon execution and delivery of the assignment and the notes that the mortgage secured, or the legal release of the mortgage and the surrender of the notes;" and he refused to accept the draft on either of those terms.

We find, therefore, that the defendant F. A. Miller made a lawfully constituted tender of the amount due the plaintiff W. J. Steckel on March 5, 1921; that he kept his tender good, thus stopping interest; and that the plaintiff must accept the sum paid into court as full satisfaction of the debt due under the mortgage. Wherefore, the decree entered is—*Affirmed.*

ARTHUR, C. J., PRESTON and STEVENS, JJ., concur.